# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| **In Re**<br><br>DALE'S SERVICE, INC.,<br><br>**Debtor.** | **Bankruptcy Case<br>No. 07-01255-JDP** |

## MEMORANDUM OF DECISION

**Appearances:**

    Kelly Beeman, Boise, Idaho, Pro Se, Creditor.

    Gary L. McClendon, Boise, Idaho, Attorney for the U.S. Trustee.

### *Introduction*

On March 10, 2008, attorney Kelly I. Beeman ("Beeman") filed an Application for Allowance of Attorney's Fees, Docket No. 88, and Motion for Limited Order Authorizing Employment from August 22, 2007 through September 18, 2007, Docket No. 89.  The United States Trustee objected to the Application and Motion, Docket No. 98.  Beeman has responded. Docket No. 100.

MEMORANDUM OF DECISION - 1

The Court conducted a hearing concerning this matter on April 15, 2008, and after presentation of arguments by the parties, the Court took the issues under advisement. The Court has considered the submissions of the parties, the exhibits admitted at the hearing, the arguments of counsel, and the applicable law. This Memorandum constitutes the Court's findings of fact, conclusions of law, and decision concerning the issues. Fed. R. Bankr. P. 7052; 9014.[1]

*Procedural History*

The pertinent facts are as follows. On August 10, 2007, Debtor Dale's Service, Inc. ("Debtor") filed a chapter 11 petition. Docket No. 1. The petition was filed without the assistance of an attorney and was signed by David G. Hobson ("Hobson"), the president of Debtor.

On August 22, 2007, Beeman filed an "Application to Employ Attorney for Debtor," Docket No. 6, as well as a supporting affidavit.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001– 9037.

MEMORANDUM OF DECISION - 2

Docket No. 7.[2]  On August 24, 2007, the United States Trustee ("UST") filed an "Objection to Employment of Counsel for the Debtor in Possession and the Granting of a Post-petition Security Interest."  Docket No. 15.  Beeman responded to the UST's objection, Docket No. 18, and set the employment application and Beeman's request for a post-bankruptcy secured interest for a hearing to occur on September 18, 2007, Docket No. 19.

On September 14, 2007, Hobson filed, *pro se*, a "Motion for Continuance to Seek Competent Counsel," in which he informed the Court that Beeman had been terminated as Debtor's counsel, effective immediately.  Docket No. 24.  This motion further sought an extension of time in which to obtain substitute counsel.

---

[2]  That same day, Beeman filed a number of other pleadings in this case, including: "Notice to Creditors of Opportunity to Object to Employment" and a supporting affidavit, Docket Nos. 8-9; "Disclosure of Compensation of Attorney for Debtor," Docket No. 10; "Application to Approve Delivery and Deposit of Post-Petition Retainer" and a notice of hearing on that application, Docket Nos. 11-12; and an "Ex Parte Motion for Extension of Time to File Schedules: U.S.C. § 521, Fed. Rules, Bankr. P. 1007(C), Local Bankruptcy Rule 1007.2," and a supporting affidavit, Docket Nos. 13-14.

MEMORANDUM OF DECISION - 3

On September 17, 2007, the day before the scheduled hearing, Beeman filed a "Withdrawal of Application to Employ Attorney for Debtor." Docket No. 23.[3]

At the September 18 hearing, Beeman and counsel for the UST appeared. After some discussion, the Court vacated the hearing because Beeman's applications had been withdrawn. Docket Nos. 26, 104.

On October 1, 2007, attorney Jake Peterson filed an "Application to Employ Attorney" in which he sought approval from the Court to be employed as Debtor's counsel in the chapter 11 case. Docket No. 35. This application was granted without objection on October 3, 2007. Docket No. 44. With Mr. Peterson serving as counsel, Debtor proposed and confirmed a chapter 11 plan on February 22, 2008. Docket No. 80.

Thereafter, on March 10, 2008, Beeman filed an "Application for Allowance of Attorney's Fees," as well as a "Motion for Limited Order Authorizing Employment From August 22, 2007 Through September 18,

---

[3] At the same time, Beeman filed a "Withdrawal of Application to Approve Delivery and Deposit of Post-Petition Retainer." Docket No. 22.

MEMORANDUM OF DECISION - 4

2007." Docket Nos. 88, 89. The UST objected to Beeman's application, Docket No. 98, to which Beeman filed a response, Docket No. 100. The matter was heard on April 15, 2008, and the Court thereafter took the issues under advisement.

*Analysis and Disposition*

A.

Initially, attention must be paid to the unusual procedural course Beeman has taken in this case. The initial application to approve Beeman's employment was filed on August 22, 2007, and scheduled for a hearing on September 18, 2007. However, Beeman withdrew that application the day before the hearing occurred. At the hearing, Beeman's decision to withdraw the application was discussed, together with the Court's concern that Beeman had not formally withdrawn as counsel of record.

The Court again inquired about the reason Beeman withdrew his original application at the April 15, 2008 hearing. At that time, Beeman argued that he had been told by this Court to withdraw the application to approve his employment as Debtor's attorney. However, from a review of

MEMORANDUM OF DECISION - 5

the record of the prior hearing, it is clear that Beeman is incorrect.

By September 18, 2007, Beeman had already withdrawn the application. As the transcript of the September hearing makes abundantly clear, the Court's comments instead focused upon Beeman's continued status as counsel of record in the case:

> BEEMAN:
>> We filed a motion to withdraw as their counsel because I was terminated last Friday. So today's hearing is moot.
>
> THE COURT:
>> I understand you don't want to go forward today. I'm just having trouble finding your motion to withdraw. Counsel, have you two seen it?
>
> [UST'S COUNSEL] McCLENDON:
>> Your Honor, yesterday, there was a withdrawal of the application to employ attorney.
>
> THE COURT:
>> Correct.
>
> McCLENDON:
>> There wasn't a motion to withdraw under Rule 9010.1, local bankruptcy rule.
>
> THE COURT:
>> Yeah. Am I incorrect, Counsel?

MEMORANDUM OF DECISION - 6

BEEMAN:
> No. I just - -

COURT:
> Okay. I have no intention of making you go forward on applications that you don't want to (inaudible), Mr. Beeman. They're your applications. Technically, they're the debtor's applications but I understand if you've been terminated, we won't go forward on those. You're still the lawyer in this case.

Transcript of Motion Hearing, Docket No. 104, pp. 2-3. Later in the hearing, the following exchange took place:

COURT:
> Okay. Thank you. All right. Well, there's nothing pending before me other than the applications which you've indicated you'd like to withdraw.

BEEMAN:
> Yes, Your Honor.

COURT:
> They will be deemed withdrawn at your request. You've asked that they be withdrawn without prejudice. I don't understand that but maybe you're concerned about some things I don't need to know and so we will deem that without prejudice for whatever effect that is.
>
> Mr. Beeman, I would advise you - - it sounds like you were headed down this road - - intended to head down

MEMORANDUM OF DECISION - 7

>       this road anyway.  You need to file a motion to
>       withdraw promptly.
>
> BEEMAN:
>
>       Okay.  We'll do that.

*Id*. at p. 7.

These excerpts from the September 18 hearing show that Beeman had already withdrawn his application for approval of his employment, and the Court was concerned with the notion that, according to the Court's public docket, while Beeman had been terminated by his client, he remained as the attorney of record in the case.[4]  Contrary to Beeman's suggestion, though, at no time did the Court direct him to withdraw his original application for employment.  Indeed, that application had previously been withdrawn on Beeman's own volition prior to the September 18, 2007 hearing.

---

[4] Indeed, even now, Beeman has not formally withdrawn as Debtor's counsel, nor was a proper substitution of counsel filed when Debtor's new attorney, Peterson, appeared in the case.  This is a violation of LBR 9010.1(f).  To correct the record so the public would not be mislead about his status, on March 17, 2008, the Clerk entered a notice on the docket that Beeman's involvement in the case had been terminated.

MEMORANDUM OF DECISION - 8

B.

The Court next turns to Beeman's subsequent application to approve his employment, filed on March 10, 2008. The challenge presented by this approach is that Beeman filed this application more than two weeks *after* Debtor's chapter 11 plan was confirmed.

The confirmation of the chapter 11 plan binds the debtor and its creditors alike, and discharges a debtor "from any debt that arose before the date of such confirmation . . . whether or not a proof of the claim based on such debt is filed or deemed filed . . . . " 11 U.S.C. § 1141(d)(1). In interpreting this statute, the Supreme Court stated:

> A preconfirmation debt is dischargeable unless it falls within an express exception to discharge. Subsection 1141(d) of the Bankruptcy Code states that, except as otherwise provided therein, the "confirmation of a plan [of reorganization] . . . discharges the debtor from *any debt* that arose before the date of such confirmation," 11 U.S.C. § 1141(d)(1)(A) (emphasis added), and the only debts it excepts from that prescription are those described in § 523, see § 1141(d)(2) [applying to individual debtors].

*F.C.C. v. NextWave Personal Commc'ns Inc.*, 537 U.S. 293, 303 (2003).

MEMORANDUM OF DECISION - 9

The Code defines a debt as "liability on a claim." 11 U.S.C. § 101(12). A claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured". 11 U.S.C. §§ 101(5). Clearly, Beeman's fees were a debt incurred by Debtor prior to confirmation,[5] and unless the confirmed plan or order of confirmation provided otherwise, those fees were subject to discharge under § 1141.

Debtor's confirmed First Amended Plan of Reorganization, Docket No. 78, does not provide for any payments to Beeman for his accrued fees and costs. Instead, it provides for payment of

> All allowed priority claims set forth in 11 U.S.C. for profession[al] fees, post petition taxes and expenses, and quarterly fee fo [sic] the US Trustee as far as applicable. Debtor will request payment

---

[5] Beeman's application for compensation shows the services for which he seeks payment were rendered between August 22 and September 18, 2007. The application seeks approval of $7,040 in fees, and approximately one-third of the time billed by Beeman was related to his activities in attempting to gain Court approval of his employment. Application for Allowance of Attorney's Fees, Exhibit "C", Docket No. 89.

MEMORANDUM OF DECISION - 10

> of fees to its attorney, appraiser and accountant for services herein [and will pay] all allowed administrative claims within 120 days of confirmation of the Plan, or as may be agreed to by counsel and the Debtor, subject to approval by this Court.

Plan, Docket No. 78, at p. 2.[6] Debtor's disclosure statement, Docket No. 60, and supplements thereto, Docket Nos. 73 and 74, also disclose no intent by Debtor to pay Beeman. As can be seen from its language, the only professionals to be compensated under the confirmed plan are those of Debtor's attorney, accountant and appraiser which Debtor requests be paid.[7]

Assuming without deciding that Beeman held a potential administrative claim with a right to payment, he could have objected to confirmation of any plan that did not provide for his payment. *See*

---

[6] A similar provision appeared in Debtor's original proposed chapter 11 plan filed on December 14, 2007. Docket No. 59.

[7] Indeed, after confirmation, Debtor sought approval to pay Peterson and its Court-approved appraiser. *See* Docket Nos. 81, 85 and 91. The UST did not object to allowance and payment of these fees, presumably since employment of these professionals had previously been approved by the Court, and the confirmed plan expressly provided for such payments.

MEMORANDUM OF DECISION - 11

§ 1129(a)(9)(A) (to be confirmed, a plan must pay claims entitled to priority under § 507(a)(2) on the effective date of the plan). But Beeman did not object to confirmation of Debtor's plan, and under § 1141(a) he is therefore bound by its terms.

### C.

According to the record, Beeman was not served with formal notice of the events leading up to confirmation of Debtor's plan, including the confirmation hearing. As a result, before the Court concludes that Beeman should be bound by Debtor's confirmed plan which makes no provision for payment of his alleged administrative claim, the Court must consider whether his due process rights were impaired. The Court concludes that they were not.

Due process "mandates notice be given to a creditor whose property rights are being affected so that he may have his day in court." *Lubeck v. Littlefield's Rest. Corp. (In re Fauchier)*, 71 B.R. 212, 215 (9th Cir. BAP 1987) citing *Matter of Frankina*, 29 B.R. 983, 985 (Bankr. E. Mich. 1983). However, the notice requirement is satisfied when a party "does receive actual notice

MEMORANDUM OF DECISION - 12

and has some available remedy to set aside the judgment, whether or not the party has received formal notice." *Clearwater P'ship v. McElroy (In re B.I.B. Co., Inc.)*, 165 B.R. 293, 295 (M.D. Fla. 1994) citing *Matter of Park Nursing Center, Inc.*, 766 F.2d 261 (6th Cir. 1985).

The Court finds that Beeman had actual notice of the events occurring in Debtor's chapter 11 case based upon his involvement in that case in his temporary role as Debtor's proposed counsel. The Ninth Circuit has stated that "[w]hen the holder of a large, unsecured claim . . . receives any notice from the bankruptcy court that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril." *Matter of Gregory*, 705 F.2d 1118, 1123 (9th Cir. 1983).

Thus, Beeman had sufficient notice of the pendency of Debtor's bankruptcy case to require that he act to protect his interests during the confirmation process. Beeman alleges he provided professional services to Debtor during the bankruptcy case and was entitled to compensation for his work. However, without adequate explanation, Beeman failed to ask

MEMORANDUM OF DECISION - 13

for approval of his administrative claim, and failed to oppose Debtor's plan which proposed no payment on that claim.  Unfortunately, while he knew the chapter 11 case was proceeding, because he sat on his rights as a creditor, Debtor's plan was confirmed and Beeman's debt was discharged.

Confirmation of a plan also precludes Beeman from complaining about specific plan provisions.  In this case, Debtor's confirmed plan warns Beeman of the loss of his rights upon confirmation.  It provides that:

> NO CREDITOR NOT SPECIFICALLY
> PROVIDED FOR HEREIN, WILL RECEIVE ANY
> CASH OR OTHER DIVIDEND BY VIRTUE OF
> THIS PLAN, WHATSOEVER, AND THE
> DEBTOR WILL BE DISCHARGED OR [sic] ANY
> FURTHER PERSONAL OBLIGATION TO ANY
> CREDITOR EXCEPT AS SPECIFICALLY
> PROVIDED FOR HEREIN.

Debtor's First Amended Plan of Reorganization, Docket No. 78 (capitalization in original).  Principles of finality preclude Beeman from controverting this provision.  The Ninth Circuit has addressed the res judicata effect of a confirmed plan, and stated:

> it is beyond cavil that "[o]nce a bankruptcy plan
> is confirmed, it is binding on all parties and all

MEMORANDUM OF DECISION - 14

> questions that could have been raised pertaining to the plan are entitled to res judicata effect." *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995). Thus, if a creditor fails to timely object to a plan or appeal a confirmation order, "it cannot later complain about a certain provision contained in a confirmed plan, even if such a provision is inconsistent with the Code." *Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee)*, 193 F.3d 1083, 1086 (9th Cir. 1999).

*Enewally v. Washington Mutual Bank (In re Enewally)*, 368 F.3d 1165, 1172-73 (9th Cir. 2004) (additional internal citations omitted). Thus, Beeman is now precluded from complaining about provisions of Debtor's confirmed plan which discharge Beeman's pre-confirmation debt.[8]

## *Conclusion*

---

[8] Admittedly, this is a harsh result, and the Court is somewhat sympathetic to Beeman's position under these unusual facts. It appears he invested considerable time in this case, and that he was fired before his employment as counsel for Debtor was approved. Unfortunately, it is also clear that Beeman cannot recover fees for services rendered to the estate unless those services have first been authorized by the Court. 11 U.S.C. § 327(a); *Atkins*, 69 F.3d at 973; *In re Taylor Quality Concrete, Inc.*, 07.1 I.B.C.R. 3, 3 (Bankr. D. Idaho 2007); *In re Ferreira*, 95 I.B.C.R. 282, 283 (Bankr. D. Idaho 1995). In this case, Beeman received no approval to provide those services. But although the Court acknowledges Beeman's predicament, it cannot rewrite the rules in cases where the facts are unusual or the results are unfortunate. *In re Ruckdaschel*, 364 B.R. 724, 733 (Bankr. D. Idaho 2007).

MEMORANDUM OF DECISION - 15

Because the Court concludes that Beeman's alleged administrative claim has been discharged by confirmation of Debtor's chapter 11 plan, Beeman's application for retroactive approval of his employment, and for approval of his compensation, must both be denied.[9]

A separate order will be entered.

Dated: May 27, 2008

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

---

[9] The UST raises additional significant issues regarding the propriety of approval of Beeman's employment and his fees.  Because Beeman is not authorized to be paid under the confirmed plan, the Court need not address these issues.

MEMORANDUM OF DECISION - 16